Filed 7/16/15  P. v. Perez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062652 |
| v. | (Super.Ct.No. RIF1300038) |
| RODOLFO PEREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Harold W. Hopp, Judge. Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury found defendant and appellant Rodolfo Perez guilty of one count of grand theft in an amount exceeding $950 (Pen. Code, § 487, subd. (a)).  Defendant was sentenced to 180 days in county jail to be served on the weekends and placed on

1

probation for a period of three years on various terms and conditions. Defendant appeals from the judgment. We find no error and affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

In September 2012, Deena Salazar worked as a store manager for a Toys R Us in Corona. Among her duties was to prepare cash bag deposits for an armored car company, Garda Cash Logistics (Garda), who serviced the store and picked up the cash drop bags placed in a secured safe during the day. The pickups by Garda were scheduled by Toys R Us corporate generally on a weekly basis. During September 2012, five individuals, including Salazar and defendant, were responsible for handling the cash drops. Each of the individuals, including defendant, made between one and four cash drops per month.

On October 9, 2012, Salazar discovered that several cash drop bags were missing. Specifically, she determined that a cash bag from September 4, 2012, in the amount of about $700 and a cash bag from September 11, 2012, in the amount of around $800 were missing, and reported the money missing to her superiors.

After being contacted by Salazar, James Diaz, a regional asset protection manager for Toys R Us, confirmed the missing cash drop bags and conducted an investigation. Diaz viewed the surveillance videotapes from the area around the safe.[1] He observed

---

[1] Each of the surveillance videotapes viewed by Diaz were played for the jury at the time of trial.

defendant going to the cash office on September 4, placing the money in a cash drop bag and sealing it, and then placing the bag in the safe and walking out. Approximately 15 minutes later, defendant reentered the area, reopened the safe, placed a FedEx envelope into the safe, and then, after about three seconds, pulled the FedEx envelope out again. Defendant did not perform another cash drop during the second reentry into the safe. Diaz explained that FedEx envelopes were not normally kept in the safe and defendant appeared to have brought it into the office.

Diaz also viewed the September 12 surveillance video, which showed a morning cash drop that had been collected on the preceding day. Diaz observed defendant entering the cash office around 9:30 a.m., half an hour before the store opened, bundling the prior day's cash sales and placing the money into a cash deposit bag, and then placing the cash drop bag in the safe. Again, defendant came back a second time, approximately three hours later, picked up some papers that were sitting on a table, placed the papers in the safe, and then pulled them back out.

Diaz also reviewed the surveillance video from October 1, 2012, showing a morning cash drop for amounts collected the previous day. He again saw defendant placing the cash drop in the safe, then returning about two and a half hours later, grabbing paperwork and a FedEx envelope, placing the envelope in the safe, and after taking the envelope out of the safe, closing the safe and walking out of the cash office. The October 1 cash drop was also missing and consisted of approximately $2,300.

3

Diaz reviewed the store timesheets.  The timesheets showed that defendant was on duty on each of the days in which the cash drop bags were missing.  In addition, another asset protection investigator reviewed the surveillance videotapes and did not see any employees other than defendant accessing the store safe on the dates the cash drop bags were missing.

On November 2, 2012, Diaz interviewed defendant.  Defendant denied taking the money but resigned that day.  Diaz did not interview any other persons as part of the investigation because defendant was the only person observed to have gone into the safe when the cash drop bags were found missing.

Two Garda employees testified that they knew defendant; that defendant was a manager at the Toys R Us; and that defendant was able to access the store safe.  They also stated that on several occasions they were "waved off" by defendant, meaning they were told by defendant that there was no money deposit pickup that day.  One of the Garda employees testified that he had only been "waved off" by Toys R Us employees approximately five or six times during the two years he had serviced the store; and that, unlike other store employees, defendant would "wave off" the truck by standing outside the front door, rather than waiting for the truck to reach the cash office.

Defendant testified on his own behalf and denied stealing any money from Toys R Us.  He acknowledged that he had worked many early morning shifts at Toys R Us as of September 2012, and that during that time he had done the majority of the cash drops.  He stated that after making the cash drops, it was necessary at times to reenter the safe

4

area, such as to store employee paychecks that came in FedEx envelopes or other documents, or to obtain deposit slips or cash for change. He claimed that the FedEx envelopes that he was seen handling on the surveillance tape contained paychecks. Defendant also testified that he had never done a pickup with Garda on his own because he was not trained to do so, and as a result, he would "wave off" the Garda employees from the cash office. He admitted that he had resigned from the company on November 2, 2012, but claimed to do so because his name had been tarnished and he felt responsible for the missing money. He denied resigning because he had committed the theft.

Following trial, on October 2, 2014, a jury found defendant guilty of one count of grand theft in an amount exceeding $950 (Pen. Code, § 487, subd. (a)).

The sentencing hearing was held on January 5, 2015. At that time, the trial court denied defendant's request to reduce the offense to a misdemeanor pursuant to Penal Code section 17, subdivision (b). The court then sentenced defendant to 180 days in county jail to be served on the work release program with credit for time served, suspended imposition of sentence, and placed defendant on probation on various terms and conditions.

II

DISCUSSION

Defendant appealed from the judgment, and we appointed counsel to represent him on appeal. After examination of the record, counsel has filed a brief under the

5

authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to conduct an independent review of the record.

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no arguable issues.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MILLER
J.

6